IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA.

AT INDIANAPOLIS, MAY TERM, 1874, IN THE FIFTY-EIGHTH
YEAR OF THE STATE.

---

### GROVE *v.* THE CITY OF FORT WAYNE.

45 429
167 143

CITY.—*Structures Overhanging Sidewalk.*—The cornice of a building which
projects over a sidewalk in a city, and which is being constructed in such a
manner as to be dangerous to persons using the sidewalk, is a nuisance.

SAME.—The city has power under the statute to abate such nuisance, and if it
fails to do so after notice to the proper authorities of its dangerous charac-
ter, and takes no precaution to prevent injury to parties using the sidewalk, it
will be liable in damages to a person injured by the falling of such cornice.

SAME.—The power of a city over its streets and the right of the public to them
extends upward indefinitely for the purpose of their preservation, safe use,
and enjoyment; and the duty of a city in this respect is commensurate with
its power.

From the Allen Common Pleas.

*W. H. Coombs, W. H. H. Miller,* and *R. C. Bell,* for appel-
lant.

*L. Newberger* and *J. Q. Stratton,* for appellee.

WORDEN, C. J.—Complaint by the appellant against the
appellee, alleging in substance, that, on, etc., a brick build-

ing was being erected in said city adjoining one of the pub-
lic streets thereof, of the height of fifty feet, and of the
length of one hundred feet; that a brick cornice of the build-
ing projected therefrom and overhung the sidewalk to the
extent of one foot; that the cornice was being constructed
in such a manner as to be of a dangerous character, and lia-
ble at any time to fall and injure persons passing beneath;
that no barricade was erected, or other means used, to pre-
vent the public from passing along the sidewalk, or to give
any notice of the danger; that for the space of six weeks
prior to the injury hereinafter mentioned, and during the
construction of said cornice, it had continued in such dan-
gerous and unsafe condition, and that the city had full notice
thereof four weeks prior to the injury complained of; that
as the plaintiff was passing along the sidewalk, and under-
neath the projecting cornice, while the same was in process
of construction, without any carelessness or negligence on
his part, a large number of bricks composing the projecting
cornice became detached and fell from the projection, strik-
ing the plaintiff upon the head and body, whereby his skull
was fractured and his body greatly bruised and injured, etc.

A demurrer was sustained to the complaint for the want
of a statement of sufficient facts, and the plaintiff excepted.
Final judgment for the defendant.

The question raised here relates to the correctness of the
ruling on the demurrer.

The complaint, of which we have made a brief synopsis
only, is quite elaborately drawn, and states, we believe, all
the facts necessary to a recovery, if the city is liable for an
injury happening by the falling of the brick from the project-
ing cornice, upon a person passing along the sidewalk under-
neath, she having had due notice of the dangerous character
of the structure, and having failed to take any steps to remedy
the evil, or to guard the public against its consequences.

We have recently decided in the case of *Higert* v. *City of
Greencastle*, 43 Ind. 574, that our cities organized under the
general law, having plenary power over streets, and having the

power of taxation sufficient for that purpose, are bound to keep the streets, including the sidewalks, in a reasonably safe condition for travel in the ordinary modes, and and in default of doing so, are liable in damages to persons injured by the neglect. We need not enter again upon the discussion of that subject. We may remark, however, that this is the established doctrine of the Supreme Court of the United States, of New York, Pennsylvania, and many other states; while in the eastern states it is held that towns are not thus liable unless made so by statute. See collection of cases in note 2 to page 915, vol. 2, of Dillon on Municipal Corporations. In the recent case of *Detroit* v. *Blakeby*, 21 Mich. 84, it was held, Judge COOLEY dissenting, that such liability does not exist in the absence of a statute imposing it. We are disposed to follow the general current of authorities and the decisions of this court, without entering upon any critical examination of the foundation on which they rest. But we may observe that the act for the incorporation of cities, etc., provides that "the common council shall have exclusive power over the streets, highways, alleys and bridges within such city," and also that they may collect an *ad valorem* tax, for general purposes, on all property within the city, etc., not exceeding a stated per centum. 3 Ind. Stat. 91, sec. 58, p. 94, sec. 61. When cities organize under this act, thus investing themselves with exclusive power over the streets, and with ample power of taxation for general purposes, under which must be included street improvement purposes, a duty devolves upon them to exercise the powers granted so far as to make the streets reasonably convenient and safe; and if they fail to do so, it does not seem at all unreasonable that they should respond in damages to any one injured by their neglect of this duty.

We proceed with the examination of the case on the theory that the action will lie, if the facts alleged bring the case within the general principle above stated.

If the injury complained of had arisen from obstructions upon the surface of the sidewalk, or from excavations in or

under it, the case would have presented no difficulty. The city would clearly have been liable. But the injury arose from a structure high above the surface, not connected with the street or sidewalk, though projecting over the latter. No case involving the exact question has been cited, but there are several that bear some analogy to it. Thus, in *Drake* v. *City of Lowell*, 13 Met. 292, an awning which projected from a building over the sidewalk, with rafters extending from the building outward, and supported by posts standing at the edge of the sidewalk, the top of the awning being covered with boards, and being broken down by the accumulation of snow thereon, and falling upon a person passing underneath, was held to be a violation of the statute which required that "all highways shall be kept in repair, so that the same may be safe and convenient for travellers, at all seasons of the year;" and that the person injured was entitled to recover.

The case of *Day* v. *Inhabitants of Milford*, 5 Allen, 98, was like that last noted, except that it does not appear that the awning was supported by posts standing upon the street or sidewalk. The party injured recovered.

In *Hixon* v. *City of Lowell*, 13 Gray, 59, it was held that a city is not liable for an injury caused to a foot passenger on a sidewalk which the city is bound to keep in repair, by the falling of an overhanging mass of snow and ice from the roof of a building not owned by the city. In this case the court, in reference to the supposed difference between that case and *Drake* v. *City of Lowell*, above cited, say: "It may not be easy to perceive and state distinctly the difference between the two cases, in regard to the liability of the town; but we are all of opinion that there is such a distinction, and that the facts which were proved on the trial will not sustain this action."

In *Barber* v. *City of Roxbury*, 11 Allen, 318, it was held that a rope stretched across a highway, above the ground, and attached at each end to objects which are outside of the limits of the highway, and in temporary use, was not a defect or want of repair in the highway, for which a city is

liable to a traveller who receives an injury from coming into collision with it, while it is in motion from human agency. The court distinguish this case from *Drake* v. *City of Lowell, supra,* and the cases following it, by saying : " But such awnings were fixed and permanent structures within the bounds of the highway," and add that " this court has more than once expressed the opinion that in such a case the limit of this liability was reached."

In *French* v. *Brunswick,* 21 Maine, 29, it was held that a rope stretched across the street and left temporarily, during which time an injury was occasioned thereby to a person passing, was such an obstruction as rendered the town liable. But we return to Massachusetts. In the case of *Jones* v. *Boston,* 104 Mass. 75, it was held that a city was not liable, under their statute, for an injury received by a traveller on a sidewalk, which it is bound to keep in repair, through the falling upon him of a sign which the proprietor of an adjoining building has suspended over the sidewalk on an iron rod insecurely fastened to the building. The court in their opinion cite the cases of *Drake* v. *City of Lowell* and *Hixon* v. *City of Lowell, supra,* and say : " The question is, by which of those decisions the present case is to be governed." And they follow *Hixon* v. *City of Lowell.* To distinguish them they say : " The awning differs from the overhanging sign, or ice, in that it is not a mere incident or attachment of the building alone, but is a structure erected with reference, in part at least, to the use of the sidewalk as such. The structure itself, being adapted to the sidewalk, in some measure, as a part of its construction and arrangement for use as a sidewalk, a danger from its insecure condition may reasonably be treated as arising from a defective or unsafe condition of the sidewalk." From these observations, it would seem that the court considered that any thing projected over the sidewalk from a building, but not connected with the street or sidewalk, and of course high enough not to interfere with passage underneath, however insecure and dangerous it

might be, would not be regarded as a defect within their statute; while the projection, if supported by posts erected upon the sidewalk, would be. This distinction, when considered with reference to the statute under which the decisions were made, may be legitimate and proper; but when applied to cases that are to be governed by general principles of law, rather than any particular statute, it does not seem to us to be very tangible or well founded. A more substantial distinction between the awnings and a rope stretched across the street was pointed out, as we have seen, in the case of *Barber* v. *City of Roxbury, supra*, by saying that "the awnings were permanent structures within the bounds of the highway." We may remark, before leaving the cases in Massachusetts, that *Drake* v. *City of Lowell* and *Day* v. *Inhabitants of Milford* have not been overruled, so far as we are advised, but subsequent cases having some analogy to them have been distinguished.

In the case of *Jones* v. *City of New Haven*, 34 Conn. 1, the plaintiff was held entitled to recover for an injury received while within the limits of a street on a public square, by the falling of a limb from an overhanging tree. But in *Hewison* v. *City of New Haven*, 34 Conn. 136, it was held that where a flag was suspended by private individuals across a public street of a city, with iron weights at the lower corners, which were liable to become detached by the motion of the flag in the wind, and to fall upon persons passing below, and one of the weights became detached in this manner, and fell upon and injured a traveller on the highway, who was in the exercise of reasonable care, the city was not liable for the injury under a statute which imposed the duty to keep the street "in good and sufficient repair."

This case follows that of *Hixon* v. *City of Lowell*, and in the opinion the following paragraph from the latter case is quoted: " In most cases the town has discharged its duty when it has made the surface of the ground, over which the traveller passes, sufficiently smooth, level and guarded by railings, to enable him to travel with safety and convenience by the

Grove *v*. The City of Fort Wayne.

exercise of ordinary care on his own part. There may be many causes of injury to which he might be exposed in travelling upon such a way, which would not constitute any defect or want of repair in the way itself."

These decisions of the New England States, based, as they are, upon statutes prescribing the duties and liabilities of towns, while they are valuable for their intrinsic worth, and as emanations from learned judicial tribunals, cannot be held as controlling, in the absence of such statutes, except so far as the reasoning is based upon general principles of the law, and not upon particular statutory regulations.

We pass to some other cases. In the case of *Norristown* v. *Moyer*, 67 Penn. St. 355, it was held that where the plaintiff, whilst loading a cart, was injured by the falling of a pole in the street, which had been erected years before by citizens, it having become rotten, he was entitled to recover from the town, and that it was immaterial that the pole was in such part of the road as not to obstruct travel.

The case of *Parker* v. *The Mayor, etc., of Macon*, 39 Ga. 725, was this. It was held that where a two story brick wall of a house that had been burnt was left standing at the edge of the sidewalk, though private property, if so much dilapidated as to endanger the lives of persons passing on the streets, it was a nuisance, and it was the duty of the city to remove it, but having failed to do so, and it having fallen and injured the plaintiff, he was entitled to recover. This was a well argued and well considered case, and we make the following extract from the opinion :

" As the charter of the city of Macon confers upon the mayor and council full power and authority to keep the streets, lanes, alleys, sidewalks and public squares, of the city in good order, and to remove any buildings, posts, steps, fences, or other obstructions or nuisance, which is a power conferred upon public officers for the public good, it is their duty to exercise it, and to keep the streets, lanes, alleys and sidewalks in such condition that persons passing over or along them may do so with safety and convenience. To this end it is

the duty of the city authorities to remove any nuisance from the streets or sidewalks; and anything that endangers the life of a person passing along the sidewalk is a nuisance which they are bound to abate. As, for instance, a deep pit dug by the sidewalk, so near it that a person passing along the street at night is in danger, by a misstep, of falling into it, anything hanging over the street in such a manner that it may fall upon a person passing and do him a serious injury. But it is insisted, in this case, that the wall being private property, at the edge of the sidewalk, was not embraced within the objects which the charter gives the city authorities power to remove, as it was not in the street or sidewalk. We think this too narrow a view of the subject. If the city is bound to fill up a pit dug by the edge of the sidewalk, or to fence it off, so that no one may be injured by it, or to remove anything hanging over the sidewalk, which may work injury to those passing by, why is it not bound to remove a crumbling wall standing so near the sidewalk as to fall upon it? In this case the wall was two stories high, and had stood exposed to the weather for several months after the house was burned. It was immediately upon the edge of the sidewalk, and could not fall in that direction without falling upon it. And the declaration alleges that it was from its character and position insecure, and endangered the lives of passengers upon the street. If so, it was a nuisance, which it was the duty of the mayor and council to take the necessary steps to abate, and having failed to do so, they are liable for the damages."

There is an earlier case on the subject of the falling of a wall under similar circumstances, in which it was held that the city was not liable. *Howe* v. *New Orleans*, 12 La. An. 481. In the latter case, however, no authorities are cited upon the point, and the consideration given the subject does not seem to have been very thorough.

We have thus glanced at the cases which have come to our notice, seeming to have a bearing upon the question before

us, and with the aid of such lights as they may afford, we pro-ceed more directly to the consideration of that question.

We have already seen that cities organized under the general law of this State have exclusive power over highways, streets, alleys, etc., within the city, with ample power of taxation for general purposes. They have also special power "to prevent the encumbering of streets, squares, sidewalks and crossings with vehicles, or any other substance or materials whatever interfering with the free use of the same." And, also, "for the removal and abatement of nuisances." Sections 53 and 54 of the statute before cited. Under plenary powers like these, a city has not discharged her duty to the public when she has merely made the surface of the ground over which the traveller passes sufficiently smooth and level, and guarded by railings, to enable him to travel with safety and convenience, by the exercise of ordinary care on his part. Obstructions entirely above ground may interfere quite as much with the safe and convenient use of a street or sidewalk as those upon the surface. Indeed, the danger from unsafe projections over a street would seem to be greater than from obstructions upon the surface. The latter may, in many cases, with care, be avoided by the person passing. The former cannot, except by foregoing the use of the street so far as to keep out of the way of the matter liable to fall. It will not do to say that a city has no power over a street above the surface. That would deprive her of the right to prevent the projection of signs and other obstructions over a street, not reaching to the surface, rendering the street impassable. The power of a city over her streets, and the right of the public to them, extends upwards indefinitely, for the purposes of their preservation, safe use, and enjoyment. And the duty of a city in this respect is commensurate with her power.

The cornice projecting over the sidewalk, being constructed in such a manner as to be dangerous and liable to fall, was a nuisance, interfering with the safe use of the sidewalk below, and might have been abated by the city. If

she chose to let the building be completed with the projecting cornice, she might have taken steps to guard the public against the danger of passing under. But having done neither, after having had notice, she is liable for the injury complained of.

The demurrer to the complaint should have been overruled.

The judgment below is reversed, with costs, and the cause remanded, for further proceedings.