City of Huntington *v.* McClurg.

## City of Huntington *v.* McClurg.

[No. 2,811.   Filed April 26, 1899.]

Appeal and Error.—*Practice.*—*Motion to Make Complaint More Specific.*—*Amendment of Complaint.*—An assignment of error upon the action of the court in overruling a motion to make the complaint more specific is unavailing on appeal, where after overruling the motion an amended complaint was filed and the motion was not renewed. *pp. 262, 263.*

Contributory Negligence.—*Personal Injury.*—*Cities.*—*Pleading.*—*Complaint.*—A complaint in an action against a city for damages on account of injuries received by plaintiff from falling on a defective sidewalk, alleged that the sidewalk was constructed of boards nailed upon wooden stringers, that the stringers had become rotten, and there were holes in the ground under the boards, and there was nothing to hold the boards in place; that plaintiff while walking slowly and with due care over the walk in company with another lady was, without any fault or negligence on plaintiff's part, tripped and struck by one of the boards flying up at one end, when the lady accompanying her stepped on the other. It was also alleged that plaintiff lived ten miles in the country and had never passed over such sidewalk, and had no notice or knowledge of its defective condition. *Held*, that as a matter of pleading, the plaintiff was sufficiently shown to be free from contributory negligence. *pp. 263-265.*

Judgments.—*Verdict.*—*When Special Findings in Conflict with General Verdict.*—In deciding a motion for judgment upon special findings notwithstanding the general verdict, it is the duty of the court to indulge every reasonable intendment in support of the general verdict, and none in favor of the answers to interrogatories, and if the special findings, taken together, be not so clearly contrary to the general verdict as to be irreconcilable with it, the motion must be overruled. *pp. 265, 266.*

Special Findings.—*Conflicts.*—*Verdict.*—Special findings which are inconsistent with other special findings cannot override the general verdict. *p. 266.*

Instructions.—*Record.*—*Exceptions.*—*Appeal and Error.*—*Practice.*—The only method provided by law for taking an exception to in-

structions, other than by bill is by writing on the margin, or at the close of each instruction, the words "refused and excepted to," or "given and excepted to," and having such memorandum signed by the judge and dated, and, where an exception to an instruction is signed by attorneys, but not by the judge, such instruction will not be examined on appeal. *pp. 267, 268.*

APPEAL AND ERROR.—*Instructions.*—*New Trial.*—*Joint Assignment.* —Where a motion for a new trial assigned as one cause the giving of a certain instruction jointly with others to which no exception was properly taken, the Appellate Court cannot consider such instruction separately, as the assignment could be maintained only by establishing that there was available error in the giving of each of the instructions of the series. *p. 268.*

CITIES.—*Liability Arising from Defect in Sidewalk Constructed by County.*—A city is not relieved from liability for an injury sustained on a defective sidewalk by reason of the fact that the sidewalk was constructed by the county on land originally platted as part of the public square, where the city recognized the sidewalk by constructing a gutter and placing curbstones along the side thereof, and such sidewalk was in general use by the public. *pp. 268-271.*

From the Huntington Circuit Court. *Affirmed.*

*France & Dungan* and *Hart & Hart,* for appellant.

*Whitelock & Cook,* for appellee.

BLACK, C. J.—The appellee, Rachel A. McClurg, brought her action against the appellant to recover damages for a personal injury suffered by the appellee from falling upon a defective sidewalk.

The overruling of a motion to make the complaint more specific is assigned as error. After the motion was overruled, an amended complaint was filed, and thereafter no motion to make the complaint more specific was filed. The amended complaint is the only complaint in the transcript of the record. The complaint which was before the trial court when the motion was overruled is not before us, and therefore this assignment of error is unavailing.

After the cause had been put at issue by the filing of an answer of general denial, the appellee, upon leave granted, filed an amended complaint, and it is stated in the record that the appellant objected to the amendment of the complaint,

City of Huntington *v.* McClurg.

and that the court overruled the objection.    The appellee at the same time filed a second paragraph of complaint, and it is stated in the record that the appellant objected, and that the court overruled the objection.    The appellant has assigned here that the court erred in allowing the appellee to amend her complaint; also, that it erred in allowing her to file a second paragraph of complaint.    It does not appear that any grounds of objection as to the second paragraph were stated to the court.    No application was made for postponement of the trial, which commenced three days later, and no question concerning need of delay to prepare for trial is involved in these specifications of the assignment of error.    It is plain that we can not assume that the trial court abused its very broad discretion in permitting the amendment of the complaint, in what respect we do not know; and, if we are to regard the objection made in connection with the second paragraph, as directed to the granting of permission to file it, we have no means of determining that any right of the appellant was injuriously affected by such action of the court.

The appellant's demurrer to the amended complaint and the second paragraph of complaint, jointly, for want of sufficient facts, was overruled.    No question is made in argument as to the negligence of the city, but it is claimed that the complaint shows the appellee to have been chargeable with contributory negligence.    As shown by the complaint, the appellee was walking along a board sidewalk at the side of a street adjacent to the public square in the city of Huntington.    In the second paragraph, which the appellant has chosen for discussion, the defective condition of the sidewalk, which it was alleged was used and traveled by the public generally, was described as follows:    "That said sidewalk had been constructed by laying down wooden stringers lengthwise on the ground, and then nailing the boards thereon; that for more than six months before the 11th day of October, 1896, said stringers had become rotten and decayed, and at places had entirely rotted away, and there were holes

in the ground under said boards, leaving nothing to hold said boards; that the nails which had fastened said boards to said stringers were broken off, pulled out, and gone, leaving nothing on which the boards might rest, and nothing to hold them down; and that said boards were loose and warped up at the ends to such an extent that a person in stepping on the same would jostle them from their place, and to such an extent that if two persons were passing over said walk and walking together, or the one just ahead of the other, said boards would fly up at one end and trip the other, and cause him to fall," etc. It was also alleged "that the plaintiff resided about ten miles out in the country from said city, and had never passed over said sidewalk before the date as aforesaid, and that she had no notice or knowledge of the condition of said walk, and did not know that said stringers or sills were rotten and partly gone, and that said boards were loose, and that there were holes in the ground under them, and that they would fly up as aforesaid; and she further says that on said 11th day of October, 1896, she was slowly, and with due care, walking on and over said sidewalk with another lady, who was a step in advance, when, without any fault or negligence on her part, and by reason of the rotten, loose, broken, and unsafe condition of said stringers, nails, and boards, she was tripped and struck by one of said boards flying up at one end when the lady stepped on the other, and the plaintiff was thrown down," etc.

It is argued on behalf of the appellant that, notwithstanding the allegations of the want of knowledge on the part of the appellee and of due care and freedom from fault or negligence, she must be held to have been negligent, because the sidewalk was described to be in a condition such that she, in the exercise of her natural faculties, could have seen its dangerous condition, and must be regarded as chargeable with knowledge thereof, and that, therefore, it affirmatively appears that she was guilty of contributory negligence. We are unable to accede to this claim. The defects described

were not such that it can be said that they were necessarily obvious to a person walking for the first time along the sidewalk, and that danger of the kind which befell her ought to have been apprehended by her. She had a right to assume that the sidewalk was safe except so far as she knew, or by the exercise of ordinary care could discover, that it was dangerous. While the defects described were such as might easily have been discovered by one engaged in an inspection on behalf of the city, they were not, as described, necessarily so dangerous in appearance that a stranger visiting the city, and using its thoroughfares, was bound to forego passage along the sidewalk used and traveled by the public generally. Unless she was bound not to walk at all upon this sidewalk, it can not be said that she was negligent, in the face of her allegations of care and freedom from fault or negligence. As a matter of pleading, the appellee was sufficiently shown to be free from contributory fault. See *City of Elkhart* v. *Witman*, 122 Ind. 538; *City of Columbus* v. *Strassner*, 124 Ind. 482; *Town of Nappanee* v. *Ruckman*, 7 Ind. App. 361; *City of Huntingburg* v. *First*, 15 Ind. App. 552.

There was a general verdict for the appellee, her damages being assessed at $500. The jury returned answers to interrogatories submitted by the parties. The appellant's motion for judgment on the interrogatories and answers thereto, notwithstanding the general verdict, was overruled. The appellant contends, in substance, that the special findings of the jury show that the appellee could have seen that the sidewalk was in bad condition, if she had looked; that it was in such a bad state that, walking upon it in daylight, she must have observed its dangerous condition, if she had given due attention; and that, in effect, the special findings indicate that she was paying no attention, and therefore was guilty of contributory negligence. By the general verdict, the jury found upon all material facts in favor of the appellee. There was included therein the finding of the jury that the appellee was not chargeable with contributory negligence.

In deciding a motion for judgment upon special findings notwithstanding the general verdict, it is the duty of the court to indulge every reasonable intendment in support of the general verdict, and none in favor of the answers to interrogatories, and if the special findings, taken together, be not so clearly contrary to the general verdict as to be irreconcilable with it, the motion must be overruled. If the general verdict and the answers to interrogatories may both be true under supposable evidence within the issues, there is not such antagonism as to warrant the sustaining of the motion. And special findings which are inconsistent with other special findings can not override the general verdict. *Lockwood* v. *Rose,* 125 Ind. 588; *Town of Poseyville* v. *Lewis,* 126 Ind. 80; *Gates* v. *Scott,* 123 Ind. 459; *Heltonville Mfg. Co.* v. *Fields,* 138 Ind. 58; *Evansville, etc., R. Co.* v. *Gilmore,* 1 Ind. App. 468; *Gaar, Scott & Co.* v. *Rose,* 3 Ind. App. 269; *Fitzmaurice* v. *Puterbaugh,* 17 Ind. App. 318; *Sponhaur* v. *Malloy,* 21 Ind. App. 287.

While the answers to interrogatories showed the sidewalk to have been in a dangerous condition, and stated its defects, they showed that the appellee was fifty-seven years old, resided about ten miles from the city, and had never before passed over the sidewalk; that prior to her injury she did not know of said defects; that the walk looked reasonably safe to her; that she and her sister were walking on the sidewalk slowly and carefully, and were looking at the walk over which they were passing. The manner in which she was injured was shown as stated in the complaint. One of the interrogatories submitted by the appellant, to which the jury answered in the affirmative, was as follows: "Could plaintiff have seen, if she had looked, that said sidewalk was in bad condition, that the stringers were gone, the planks loose and unnailed, and many planks gone?" Counsel for appellant lay stress upon this special finding, but, applying the rules above stated, it is clear that if, considered by itself, without the aid of any intendment, it can be said to be antagonistic

City of Huntington *v.* McClurg.

to the general verdict, yet, considered in connection with the other special findings it cannot control the general verdict.

One of the causes in the appellant's motion for a new trial, which was overruled, was that "the court erred in giving instructions one-half, one, two, three, four, and six, asked by the plaintiff;" and another cause was that "the court erred in giving instruction number five of its own motion." An instruction, and also an exception thereto, may be made a part of the record by a bill of exceptions. This method was not attempted in the present case, but there was an order of court that the instructions given and refused be made part of the record without bill of exceptions. Assuming the instructions to be in the record, yet, in order to raise any question concerning the giving or the refusal thereof, it must be properly shown that exception was duly taken thereto. The only method in such case of taking and saving an exception, other than by bill, is that provided by section 544 Burns 1894, section 535 Horner 1897; that is, by writing on the margin or at the close of each instruction the words, "Refused and excepted to," or the words, "Given and excepted to," and having such memorandum signed by the judge and dated. The memorandum signed by the judge and dated must be made for each one of the instructions, the giving or refusal of which is questioned. This is plainly required by the terms of the statute. An exception signed by an attorney, but not signed by the judge, is not well taken. *Conden* v. *Morningstar*, 94 Ind. 150; *Baldwin* v. *Shill*, 3 Ind. App. 291. We do not find in the record an instruction numbered one asked by the appellee. After each of the instructions numbered one-half, two, three, and six, asked by the appellee, and the instruction indicated by counsel for appellant in their brief as instruction five given by the court on its own motion, we find an exception signed by attorneys, but not by the judge. These instructions, therefore, cannot be examined by us for the purpose of determining whether

there was error in giving them or either of them. At the end of instruction four, asked by the appellee, there is an exception so signed, and also one signed by the judge.

The motion for a new trial assigned as one cause the giving of instruction four jointly with others to which no exception was properly taken. This assignment in the motion for a new trial could be maintained only by establishing that there was available error in the giving of each of the instructions of the series, and in such case we can not consider one of the instructions separately. *State* v. *Gregory*, 132 Ind. 387.

Another cause assigned in the motion for a new trial was the refusal of the court to give instructions numbered nine and ten asked by the defendant. The evidence showed that at the time of the appellee's injury, and long before, there existed along the south side of the court-house square a street designated as "Court street." It is claimed by the appellant that the evidence showed that many years before the time of said injury the county built a fence around the court-house, and in doing so did not inclose the whole of the court-house square as originally platted, but threw out a portion of it into what was known as "Court street," and that the sidewalk in question was constructed by the county upon this ground so thrown out. The evidence showed that the city had recognized the north limit of the portion of the street to be used by vehicles by constructing a gutter, and placing curbstones adjacent to the strip of ground on which the sidewalk existed. The sidewalk had been actually in constant use by the people generally as a public thoroughfare of the city for many years. The purpose of the ninth and tenth instructions asked by the appellant and refused by the court seems to have been to limit the responsibility of the city for the condition of the sidewalk, because it had been so constructed by the county upon land which was originally platted, not as a part of the street, but as part of the public square, and which never was relinquished by the

county except as stated.    We think the court did not err in refusing to give these instructions.

A city is not relieved from liability for an injury to a person through a defect in its street by the fact that the defect was not produced by the city or with its authority, but was occasioned by the acts of another person, where the city has had due notice, actual or constructive, of the defective condition of the street.    See *City of Aurora* v. *Bitner*, 100 Ind. 396.    Where a sidewalk has been constructed on the side of a street, and projecting into the street from the line of an abutting lot,—the usual position of a sidewalk,—and it is used as a sidewalk for the public generally, and the municipal authorities have notice of its existence and use by the public, or it has been so constructed and thus used so long that the municipality should be presumed to know thereof, the municipal corporation will be liable for injury suffered without fault of the person injured, occasioned by reason of its want of repair, of which the corporation had due notice, actual or constructive, though the sidewalk was not made by the express authority of the corporation, and without regard to the question as to who made it, or as to the authority by which it was made.    *Village of Ponca* v. *Crawford*, 23 Neb. 662, 8 Am. St. 144, 37 N. W. 609; *City of Denver* v. *Dean*, 10 Colo. 375, 3 Am. St. 594, 16 Pac. 30.

In *Saulsbury* v. *Village of Ithica*, 94 N. Y. 27, speaking of a defective sidewalk through whose defect the plaintiff suffered personal injury, it was said, that if the structure which caused the injury was erected on the land of the municipal corporation, or on premises which it controlled, by permission of its officers, the city would be liable as if the building of the walk had been a corporate act; and it was said: "An equal liability is incurred when by omission to repair or compel the removal of a walk constructed without their authority, but of the existence of which they have notice, a way dangerous for travel is allowed to stand within the limits of its streets."

In *Sewell* v. *City of Cohoes*, 75 N. Y. 45, where land within the city had been by the municipal authorities treated as a public street, graded, paved, etc., and it was used as a public street in such a manner as to be held out to the public as such a street and as to invite the public to travel upon it, and to all appearances, as to the character of its improvements, it was one of the thoroughfares of the city, open and free to all, it was held that if the land upon which the street was located actually belonged to the state, and had not been legally laid out as a street, the city would not be relieved from liability of cities for injuries occasioned from defects in their streets suffered to exist through negligence of the municipality, and that the city was estopped from claiming that the land was not a legal highway.

In *Village of Mansfield* v. *Moore*, 124 Ill. 133, 16 N. E. 246, the sidewalk in question was built and established by the village officers within the corporate limits of the village, but in fact upon private ground, a part of the right of way of a railroad, lying just south of a public highway, or street. It was said that the corporate authority "so acted in reference to the sidewalk as to hold it out to the people as a public thoroughfare. They invited the public to use it as belonging to the village. Having assumed to perform the same duty in regard to it as though it was a part of one of the streets, they were bound to use the same degree of vigilance as they exercised in reference to other sidewalks within the limits of the corporation."

In *City of Aurora* v. *Colshire*, 55 Ind. 484, the city had raised the grade of the street to a level with the top of a wall erected by private individuals upon their private property beyond the border of the street as it existed before the raising of the grade, and the city had thus adopted the space on top of the wall, and used it as a part of the street. It was said by the court: "If the whole street had been established over private property, without authority, and used by the city, it would not have afforded the least justification, excuse, or

even palliation of the wrong of which the appellee complained. One wrong will not justify another. It was sufficient that the city adopted the private wall as a part of the street—whether rightfully or wrongfully—to make it liable." If the city authorities permitted the place in question to be used by the public as a sidewalk, and it was in fact a thoroughfare of the city in constant use by the people generally going back and forth, these facts warranted the inference that the city had adopted it as a public sidewalk, for whose safe condition it was responsible. See *Johnson* v. *City of Milwaukee*, 46 Wis. 568, 572, 1 N. W. 187; *Gallagher* v. *City of St. Paul*, 28 Fed. 305; *Phelps* v. *City of Mankato*, 23 Minn. 276.

In the case before us, there was a street in the central portion of the city, and there was no other sidewalk or thoroughfare along its north side, and along the south side of the court-house square, except the one on which the appellee was passing when injured, which had been in existence and so used for many years. Plainly, it was used and enjoyed and recognized by the city as one of its public sidewalks, and, for the purposes of such a case as this, must be regarded as having been so adopted by the city as to make the municipal corporation responsible for its not being in a reasonably safe condition. Judgment affirmed.